UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA

v.                                                                                    No. 5:14-cr-4-BJB-2

DEMARIO CENTEL MAXIE

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Demario Centel Maxie is serving a 180-month sentence for possessing firearms as a previously convicted felon. He seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) for five reasons: changes to the definition of "serious drug felony" and "serious violent felony," the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), his trial attorney's allegedly defective representation, the Bureau of Prisons' purported failure to grant him jail-time credits,[1] and his rehabilitation. Compassionate Release Motion (DN 166). But none of these reasons are "extraordinary and compelling," and granting Maxie compassionate release would be inconsistent with the sentencing factors that Congress has directed judges to consider. So the Court denies Maxie's motion for compassionate release as well as his corresponding request for appointed counsel.

Law-enforcement officers began investigating Maxie in 2009 for trafficking in firearms despite his prior felony convictions. Presentence Investigation Report (DN 78) ¶ 14. In 2014 a federal grand jury indicted him for possessing firearms as a prohibited person. Indictment (DN 1) at 4–5. Later that year, a jury convicted him of two counts of being a felon in possession of a firearm following a trial. Because the law treated Maxie as an "armed career criminal" under 18 U.S.C. § 924(e), Maxie faced a mandatory minimum sentence of 15 years in prison and a maximum sentence of life imprisonment. ¶ 94. The guidelines range was 235–293 months. ¶ 95. The district judge previously assigned to this case sentenced Maxie to the mandatory minimum of 180 months and ordered that sentence to run consecutively to an undischarged state sentence. Sentencing Transcript (DN 101) at 14:17–24; Judgment (DN 87) at 3.

The compassionate-release statue, § 3582(c)(1)(A), authorizes a district court to "reduce [a defendant's] term of imprisonment" if "extraordinary and compelling

---

[1] The Court previously denied a standalone *pro se* motion to run Maxie's federal sentence concurrently with his state sentence. *See* DN 172.

1

reasons warrant such a reduction." The reduction must be consistent with the § 3553(a) factors (set out by Congress to guide sentencing discretion) and the "applicable policy statements issued by the Sentencing Commission" regarding compassionate release. § 3582(c)(1)(A).[2] "If each of those requirements are met, the district court 'may reduce the term of imprisonment,' but need not do so." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting § 3582(c)(1)(A)). A district court "may deny compassionate-release motions when any of the three prerequisites … is lacking." *Id.* at 519.

**A. Extraordinary and Compelling Reasons.** Maxie identifies five reasons in support of early release that he asserts are "extraordinary and compelling." Four are entirely barred from consideration by binding Sixth Circuit precedent, however. And the fifth, while potentially relevant, cannot lead to compassionate release standing alone.

**1.** First, the Court of Appeals has held that "[n]onretroactive legal developments, considered alone or together with other factors, cannot amount to an 'extraordinary and compelling reason' for a sentence reduction." *United States v. McCall*, 56 F.4th 1048, 1065–66 (6th Cir. 2022).

One of Maxie's arguments relies directly on nonretroactive legal developments. He asserts that if "if sentenced today … he would not have been enhanced under … § 924(e)" because of changes to that section under the First Step Act. DN 166-1 at 4. Specifically, he contends that his prior convictions cannot be § 924(e) predicates because he "has not done 12 months for none of his prior offenses." Reply (DN 174) at 2. By referencing this requirement, Maxie seems to conflate § 924(e) with 21 U.S.C. § 802. The First Step Act did amend the definitions of "serious drug felony" and "serious violent felony" in 21 U.S.C. § 802 to make clear that to be a valid predicate "the offender [must have] served a term of imprisonment of more than 12 months." §§ 802(57), (58). But this change was not made retroactive. *United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021). And *McCall* is clear that "prospective changes in federal sentencing law are far from an extraordinary event." 56 F.4th at 1055–56.

More to the point, § 802 does not apply here. Section 924(e) does. The current version of § 924(e) imposes a 15-year mandatory minimum if a defendant "has three

---

[2] A defendant must also "fully exhaust[t] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait "30 days from the receipt of such a request by the warden of the defendant's facility." § 3582(c)(1)(A). Maxie appears to have satisfied the later requirement. He asked the warden to file a compassionate release motion on his behalf on May 4, 2023 and filed his motion with the Court on June 27, 2023. DN 166-3. And the Government said nothing about exhaustion in its response. DN 171.

previous convictions" for "serious drug offense[s]" or "violent felon[ies]." It defines a "serious drug offense" to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance … for which a maximum term of imprisonment of ten years or more is prescribed by law." § 924(e)(ii). Nothing in this language requires a defendant to serve at least 12 months imprisonment on a predicate conviction. Maxie has three convictions for first degree Trafficking in a Controlled Substance. PSR ¶¶ 48, 49, 56. This charge carries a maximum sentence of 10 years imprisonment for a first offense and twenty years imprisonment for a second or subsequent offense. Ky. Rev. Stat. §§ 218A.1412(3), 532.020(1). So Maxie has three prior "serious drug offenses" under § 924(e), meaning that he would still receive the 15-year enhancement if sentenced today.

**2.** Next, the Sixth Circuit has held that "compassionate release cannot 'provide an end run around habeas.'" *United States v. West*, 70 F.4th 341, 346 (6th Cir. 2023) (quoting *McCall*, 56 F.4th at 1058). Maxie's argument that the Supreme Court's ruling in *Rehaif* "would likely impact Maxie's case" violates this principle. *See* DN 166-1 at 5. By raising a *Rehaif* argument in a compassionate-release motion, Maxie attempts "an end run around habeas." *West*, 70 F.4th at 346. He has already filed a § 2255 motion which the magistrate judge rejected. DNs 131, 134. He also filed a § 2241 motion raising a *Rehaif* argument that was rejected by a judge in the Eastern District of Kentucky. *Maxie v. Warden*, 6:19-cv-300, 2020 WL 86207, at *2 (E.D. Ky. Jan 7, 2020). The § 2241 motion was denied because it should have been brought as a § 2255 motion, but Maxie could not satisfy the requirements for filing a second or successive § 2255 motion. *Id.* at *2–3. The same remains true here. Maxie cannot use compassionate release to circumvent the limits on second or successive habeas petitions: "Because § 2255 provides a specific, comprehensive statutory scheme for post-conviction relief, any attempt to attack a prisoner's sentence or conviction must abide by its procedural strictures." *West*, 70 F.4th at 346.

**3.** Maxie's ineffective-assistance-of-counsel argument also runs afoul of the Sixth Circuit's "habeas-channeling rule." *See McCall*, 56 F.4th at 1058. He asserts that his trial counsel had a conflict of interest because he had "prosecuted Maxie in a prior state case" several years before representing him in this federal case. DN 167 at 2. He also notes that his trial counsel was recently suspended from practicing law in Kentucky for actions in an unrelated case. *Id.* at 4. But the "preferred route"[3] for

---

[3] "The usual rule is that a defendant may not raise claims for ineffective assistance of counsel on direct appeal." *United States v. Sullivan*, 431 F.3d 976, 986 (6th Cir. 1999). Raising an ineffective-assistance claim through a § 2255 motion is the norm so "the parties can develop an adequate record." *Id.* (citation omitted). But "[o]n occasion" the Sixth Circuit "has departed from the usual rule to address the merits of an ineffective assistance of counsel claim on direct appeal," though "only when the record is adequate to address the claim." *Id.*

raising ineffective-assistance claims is a § 2255 motion. *United States v. Reynolds*, 534 F. App'x 347, 372 (6th Cir. 2013). Maxie already filed a § 2255 motion raising a different ineffective-assistance claim. DN 131 at 4. The magistrate judge rejected that claim, DN 134 at 5, and Maxie neither objected to the report and recommendation, nor filed a timely notice of appeal. Maxie cannot now "avoid the restrictions on post-conviction relief by resorting to a request for compassionate release instead." *McCall*, 56 F.4th at 1057 (cleaned up).

**4.** Maxie's argument concerning jail-time credits also runs squarely into contrary Sixth Circuit precedent. He asserts that "the Federal Bureau of Prisons refuses to grant any jail time credit while in Federal Custody prior to Maxie's sentence." DN 173 at 1. Maxie asserts that "BOP began calculating Maxie's sentence from December of 2016 without awarding any jail time credits prior to Maxie's sentence," which will "result in almost three years above the time he was sentenced to in federal court." *Id.* at 2. But BOP had good reason for this: Maxie was serving an undischarged state sentence. *See United States v. Maxie*, 647 F. App'x 551, 551–52 (6th Cir. 2016); DN 172 at 1 (order denying Maxie's motion to run his state and federal sentences concurrently).

Maxie also cites several decisions in which a district court purportedly held that BOP's failure to award jail-time credits was an extraordinary and compelling reason supporting a sentence reduction. DN 173 at 2–3 (collecting cases). But these decisions are readily distinguishable. In each, the sentencing court either did not address whether the federal sentence should run consecutively to a state sentence or ordered that the federal sentence run concurrently. *See, e.g.*, *United States v. Chase*, No. 10-20398, 2021 WL 5204978, at *3 (E.D. Mich. 2021). Here, in contrast, the district judge previously assigned to this case knew at the time of sentencing that Maxie was serving an undischarged state sentence and explicitly ordered Maxie's federal sentence to run consecutively. *Maxie*, 647 F. App'x at 552. And the Court of Appeals affirmed this decision. *Id.* So this cannot serve as an extraordinary and compelling reason: "That a district court might impose a different sentence that one of its predecessors hardly seems the kind of forceful, impelling, or driving reason that could justify compassionate release." *McCall*, 56 F.4th at 1056 (cleaned up). "[W]hat is routine–a criminal defendant like [Maxie] serving the duration of a lawfully imposed sentence—is not compelling." *Id.*

**5.** Last, Maxie asserts that his "behavior and rehabilitative efforts are in itself extraordinary." DN 166-1 at 8. But "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). And because none of his other asserted reasons are extraordinary and compelling, his claim of rehabilitation cannot support compassionate release.

4

**\*\*\***

Notwithstanding Maxie's arguments to the contrary, the Sentencing Commission's recent policy statement elaborating on the extraordinary-and-compelling-reasons requirement would not change the conclusion that Maxie has failed to make such a showing. *See* DN 166-1 at 2. The Commission provided that in three designated circumstances a nonretroactive legal change "may be considered in determining whether the defendant presents an extraordinary and compelling reason." U.S.S.G. § 1B1.13(b). Those preconditions are that the defendant received an "unusually long sentence," the change in law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," and the defendant has "served at least ten years imprisonment" of his sentence. § 1B1.13(b)(6).

This policy statement appears to contradict the holding of *McCall* that the "extraordinary and compelling reasons" language of § 3582(c)(1)(A)(i) does *not* allow for consideration of nonretroactive changes in the law. 56 F.4th at 1055–60.[4] But the Court needn't confront this tension because Maxie's argument fails even if the Sentencing Commission's policy statement controls. That is because Maxie doesn't satisfy any of the new provision's three prerequisites: he has served only 7 years of his 15-year federal sentence, DN 166 at 2; that sentence is not "unusually long" in context, since it represents the statutory minimum; and no sentencing disparity—"gross" or otherwise—exists because Maxie would be subject to the same mandatory minimum if sentenced today (as discussed above).

**B. Section 3553(a) factors.** Even if Maxie could establish "extraordinary and compelling reasons" for a sentence reduction, such a reduction would be inconsistent

---

[4] Whatever the remaining validity of executive-branch overruling of judicial precedent, *see NCTA v. Brand X Internet Services*, 545 U.S. 967, 982 (2005), it seems unlikely that the Sentencing Commission—a "peculiar" judicial-executive hybrid, *see Mistretta v. United States*, 488 U.S. 361, 384 (1989)—could override the Sixth Circuit's interpretation of unambiguous statutory text ("extraordinary and compelling reasons") in *McCall*, 56 F.4th at 1064. *See generally Baldwin v. United States*, 140 S. Ct. 690, 690 (2020) (Thomas, J., dissenting from the denial of certiorari) ("*Brand X* appears to be inconsistent with the Constitution, the Administrative Procedure Act (APA), and traditional tools of statutory interpretation."). Although *McCall* described the term "extraordinary" as unambiguously excluding nonretroactive changes in law, 56 F.4th at 1064, the en banc court reserved the question whether a later policy statement could alter that conclusion given the authority delegated by Congress to the Sentencing Commission to "describe" extraordinary and compelling reasons for sentence reduction, *see id.* at n.3 (quoting 28 U.S.C. § 994(t)). At least one district judge in this circuit nevertheless concluded that this aspect of the Commission's policy statement is nullified by binding circuit precedent: "Because the Commission's inclusion of non-retroactive changes in the law conflicts with the *McCall* holding, this Court is required to treat the agency's interpretation as invalid." *United States v. Wilson*, No. 1:92-cr-138, 2024 WL 1556313, at \*8 (N.D. Ohio April 10, 2024); *see also United States v. Carter*,

5

with the factors, identified in 18 U.S.C. § 3553(a), that Congress has directed judges to consider before granting compassionate release. *See* § 3582(c)(1)(A).

Maxie's § 3553(a) position largely repackages his "extraordinary-and-compelling" arguments discussed above. If sentenced today, he reiterates, he would have received a "substantially lower sentence." DN 166-1 at 6. He also stresses his efforts to rehabilitate himself and attaches several letters from family and friends to show he will have a support system once released. *Id.* at 7–8; DN 166-5 at 2–11. For these reasons, he contends that a sentence reduction would adequately deter future conduct, protect the public, avoid unwarranted sentencing disparities, and promote respect for the law. Reply at 5.

Maxie's rehabilitative efforts are admirable and his family and social support are important. But the § 3553(a) factors still cut against a sentence reduction. According to the PSR, Maxie trafficked rather than merely possessed firearms, ultimately selling several to a confidential informant. PSR ¶¶ 1–30. This is quite a serious gun offense for a convicted felon—far more serious than someone who, say, keeps a weapon out of fear for the safety of himself or his family. Maxie also was on probation when he committed this offense. ¶ 25. He surely knew how important it was for him to avoid weapons and avoid violating the terms of his release—including through further criminal activity. Granting him early release would not adequately punish or deter such criminal conduct. Maxie also has an extensive criminal history: multiple convictions for drug trafficking, a conviction for assault under extreme emotional disturbance, multiple domestic violence convictions, and multiple DUIs. ¶¶ 48–57. Considering this history, a sentence reduction might not adequately protect the public. Nor does Maxie's sentence result in any sentencing disparities, for he would receive the same 15-year mandatory minimum sentence today. And reducing that sentence to below the mandatory minimum would not promote respect for the law, provide just punishment for the offense, or reflect the seriousness of the offense.[5]

---

No. 1:07-cr-374, 2024 WL 136777, at *6 (E.D. Pa. Jan. 12, 2024) (same regarding conflict between § 1B1.13(b)(6) and a Third Circuit decision). This Court, like the Sixth Circuit, needn't yet determine who decides the meaning of "extraordinary and compelling" given Maxie's failure to satisfy the preconditions for relief under the Commission's statement.

[5] Since Maxie has failed to establish either of the first two requirements for compassionate release, the Court needn't consider whether release would be consistent with other provisions of the Sentencing Commission's policy statement. Section 1B1.13(a)(2), for example, directs courts to consider whether "[t]he defendant is … a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." This provision raises additional potential barriers to Maxie's early release—though this order has no bearing on them.

**C. Request for Counsel.** That leaves Maxie's request for counsel. Maxie has asked the Court to appoint counsel "pursuant to 18 U.S.C. § 3582(c)(1)(A) and § 3006." DN 166 at 6. Section 3582(c)(1)(A), the compassionate-release statute, neither directs nor authorizes a district judge to appoint counsel for a *pro se* prisoner seeking compassionate release. Sections 3006 and 3006A, by contrast, do concern the appointment of counsel. Neither specifically addresses whether district judges can or should appoint counsel to prisoners seeking compassionate release. But "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings." *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021). Although "[a] district court has discretion, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when 'the interests of justice so require,'" appointing counsel is unnecessary here because Maxie's claims are readily apparent to the Court, albeit ultimately unsuccessful. *See United States v. Philips*, No. 3:10-cr-75, 2023 WL 2898452, at *6 (W.D. Ky. April 11, 2023).

## ORDER

The Court declines to appoint counsel to represent Maxie and denies his motion for compassionate release (DN 166).

Benjamin Beaton, District Judge
United States District Court

May 8, 2024

7